UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-14029-CR-MOORE/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GOSSETT T. HEAVEN,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON THE
SUPERSEDING PETITION FOR OFFENDER UNDER SUPERVISION**

**THIS CAUSE** came before me for an evidentiary hearing on the Superseding Petition for Offender under Supervision (the "Superseding Petition") (DE 550). Having considered the evidence, I recommend that Defendant be found to have violated his supervised release with respect to the allegations contained in Violation Numbers 2, 3, 4, and 6. I further recommend that Violation Numbers 1 and 5 be dismissed.

    1.    Defendant appeared for an evidentiary hearing on the Superseding Petition on November 16, 2020 and December 4, 2020. The hearing was convened via videoconference on the Zoom platform. At the hearing's outset, I advised the Defendant of his right to have the proceeding in person. The Defendant acknowledged that he understands that right and, after consultation with counsel, agreed to waive that right and consented to have the hearing conducted through videoconference. Defendant signed a written Consent to Appear by Video or Audio Teleconference Form that will be filed in the record in this case. (DE 568). Having discussed the matter with the Defendant, I find that his waiver of in person appearance and consent to proceed

through videoconference is knowing and voluntary. I also find, pursuant to the CARES Act, H.R. 788, and the Court's Administrative Orders In re: Coronavirus Public Emergency, that the hearing cannot not be further delayed without serious harm to the interests of justice.

2. The Superseding Petition alleges the following violations of supervised release:

**Violation Number 1** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 18, 2019 in St. Lucie County, FL, the defendant committed the offense of Battery (Misdemeanor 1), contrary to Florida Statute 784.03(1).

**Violation Number 2** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 03, 2020 in St. Lucie County, FL, the defendant committed the offense of Resist Officer-with Violence contrary to Florida Statute 843.01.

**Violation Number 3** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 03, 2020 in St. Lucie County, FL, the defendant committed the offense of Battery-on Officer Firefighter EMT contrary to Florida Statute 784.07(2B).

**Violation Number 4** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 03, 2020 in St. Lucie County, FL, the defendant committed the offense of Evidence Destroying contrary to Florida Statute 918.13(1A).

**Violation Number 5** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 03, 2020 in St. Lucie County, FL, the defendant committed the offense of Cocaine Possession contrary to Florida Statute 893.13(6A).

**Violation Number 6** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 03, 2020 in St. Lucie County, FL, the defendant committed the offense of Marijuana Possession-not more than 20 grams contrary to Florida Statute 893.13 (6B).

3.      The Government called three witnesses to testify on November 16, 2020: Deputy Israel Oliveira from the St. Lucie County Sheriff's Office (SLCSO), Deputy John Lopez from SLCSO, and a witness with initials S.B.   The Government called Officer John Ashton from the Fort Pierce Police Department (FPPD) to testify on December 4, 2020.

4.      Deputy Oliveira testified that he was on road patrol in Fort Pierce, Florida on September 3, 2020 when he noticed a red pickup truck with an expired license plate hauling a trailer with no tag.  Deputy Oliveira conducted a traffic stop.  He approached the truck and asked the driver and sole occupant—later identified as the Defendant—for driver's license, registration and insurance.  Defendant provided his driver's license but did not provide an insurance card. Deputy Oliveira smelled marijuana emanating from the truck and asked if there were illegal narcotics inside.  Defendant said he had marijuana in the truck's center console.  Deputy Oliveira told Defendant to step out of the vehicle and began to pat him down for officer safety.  During the pat down, Defendant said the marijuana was in his pocket instead of the center console.  Deputy Oliveira instructed the Defendant to take the marijuana out of his pocket.  When Defendant did so, a clear plastic bag containing a white substance fell to the ground.  Based on his training and experience, Deputy Oliveira believed the white substance to be crack cocaine.[1]   Defendant bent over to retrieve the bag and was told to put his hands behind his back.  When Deputy Oliveira attempted to handcuff him, the Defendant raised his left elbow and struck Deputy Oliveira's left eye before attempting to flee.  Deputy Oliveira pursued the Defendant and "took him to the ground."  Another officer (Deputy Lopez) arrived on scene and together the two officers were able to restrain the Defendant.  Defendant was read his *Miranda* rights and asked about the bag containing the white substance.  Pointing to a grassy area across the street, Defendant responded

---

[1] Deputy Oliveira testified that during his time as a police officer he has handled and field-tested crack cocaine between 60 and 100 times.

that he had tossed it. The officers searched the area but were unable to find the bag containing the white substance. They did, however, locate two bags at the scene containing a green leafy substance that field-tested positive for marijuana and weighed 4.8 grams. DE 574 at 11-48.

5. The next witness was SLCSO Deputy Lopez. Deputy Lopez was on road patrol on September 3, 2020 when he was dispatched to Deputy Oliveira's location. When he arrived, Deputy Lopez saw Deputy Oliveira on the ground trying to restrain the Defendant, who was actively resisting. Deputy Lopez said he saw the Defendant balling up his fists so he punched the Defendant multiple times in his stomach to subdue him. *Id*. at 51-56.

6. The Government called S.B. to the stand. S.B. indicated that she was several months pregnant and was having a panic attack. She asked to be excused rather than testify. The Court took a recess in order to allow the prosecutor to speak with S.B. in a virtual breakout room. After the break, the prosecutor asked for a continuance, which the undersigned granted. *Id*. at 56-66.

7. The Government introduced Exhibits 1 through 7, which were admitted into evidence without objection from the defense. Exhibit 1 is a photograph taken on the scene showing a small plastic bag on the ground next to the Defendant's truck. Exhibit 2 is a close-up photo of the same bag showing that it contains a green leafy substance. Exhibit 3 is a picture of Deputy Oliveira with a purplish bruise on his left eye. Deputy Oliveira testified that this bruise resulted when Defendant struck Deputy Oliveira with his elbow. Exhibit 4 depicts a lighter, a blue bag, and another small plastic bag found where Defendant struggled with the officers. Exhibit 5 is a close-up photograph of that bag showing that it contains a green leafy substance. Exhibit 6 is a close-up of Deputy Oliveira's bruise a few days later. Exhibit 7 is a photograph of S.B. taken on the date of the offense alleged in Violation Number 1.

8. The hearing resumed on December 4, 2020. The Government sought to call FPPD Officer Ashton to testify instead of the victim, S.B. The Government proffered that Officer Ashton responded to a 911 call from S.B.'s residence on September 18, 2019. He was wearing a body camera when he responded. The body camera's video recording showed S.B. telling Officer Ashton what happened between her and the Defendant. The Government sought to prove Violation 1 using the body camera footage and Officer Ashton's testimony. Defense counsel objected to the admission of the body camera recording on the basis that S.B.'s recorded statements were inadmissible hearsay, and Defendant had a right to cross-examine his accuser in court. The parties argued the issue based on the standard set out in *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994). Weighing the *Frazier* factors,[2] I admitted Officer Ashton's testimony and the body camera recording for reasons stated on the record. The body camera recording is Exhibit 8.

9. Officer Ashton testified that he responded to S.B.'s residence in Fort Pierce, Florida at approximately 10:08 pm on September 18, 2019. On the video, S.B. greeted Officer Ashton at the door in an agitated state. She complained that the Defendant came to her house and punched her in the face. Although it cannot be seen in Exhibit 7 or 8, Officer Ashton testified that S.B.'s face was discolored below the cheekbone where she said she had been punched. After meeting with S.B., Officer Ashton tried to find the Defendant by canvasing the area and calling the phone numbers S.B. had provided. His attempts to contact the Defendant were unsuccessful. DE 575 at 17-28.

10. I have considered the Government's evidence and find it to establish that the Defendant committed Violation Numbers 2, 3, 4, and 6 by a preponderance of the evidence.

---

[2] Under *Frazier*, "[a] court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). The hearsay must also be reliable. *Id*.

Violation Number 2 alleges that Defendant resisted an officer with violence.  This violation is adequately established through Deputy Oliveira's testimony about the September 3, 2020 encounter in which Defendant struck him, attempted to flee, and actively resisted arrest, needing two officers to physically restrain him in order to get him under control.  It is also established through Deputy Lopez's testimony about the scuffle he observed when he arrived on the scene. Violation Number 3 alleges that Defendant committed a battery on a law enforcement officer.  This violation is also established through Deputy Oliveira's testimony, as well as through Exhibits 3 and 6 which show the significant bruise Deputy Oliveira received from Defendant's assault. Violation Number 4, which alleges destroying evidence, is established through Deputy Oliveira's testimony that Defendant admitted post-*Miranda* that he threw the plastic bag containing the white substance into a grassy area where officers were unable to find it.  By doing so, Defendant destroyed evidence relating to Deputy Oliveira's investigation of whether Defendant possessed cocaine.   Violation Number 6, which alleges possession of marijuana, is established through Deputy Oliveira's testimony that Defendant admitted having marijuana in his pocket and the two bags of marijuana that were found at the scene.

11. The Government has not, however, proved Violation Number 5 by a preponderance of the evidence.  Violation Number 5 alleges that the Defendant possessed cocaine on September 3, 2020.  According to Deputy Oliveira, when Defendant reached into his pocket Deputy Oliveira saw a bag containing a white substance that looked like cocaine fall from the Defendant's pocket. The moment was brief, however, because Defendant immediately "bladed" his body to hide the bag from Deputy Oliveira's view.  The bag containing the white substance was never found and the substance was never proven to be cocaine.  Nor did Defendant admit to possessing any cocaine. Thus, proof by a preponderance of the evidence does not exist as to Violation Number 5.

12. The Government also has not proved Violation Number 1 by a preponderance of the evidence. Violation Number 1 alleges that the Defendant committed battery on S.B. on September 18, 2019. S.B. did not testify and therefore was not subject to cross-examination. Although I admitted the hearsay video of her statement that Defendant punched her into evidence, I do not give it conclusive weight for a few reasons. First, cross-examination is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Although S.B. appears in the video to be telling the truth, the lack of cross-examination makes it difficult for me to assess her credibility in determining what happened and why. Second, S.B.'s hearsay statements do not contain sufficient factual information about the relationship between her and the Defendant and the circumstances giving rise to him allegedly punching her in the face.[3] Third, although other individuals appear to be present while S.B. is talking to Officer Ashton, none of these people are heard speaking or confirming S.B.'s version of events. Officer Ashton does not appear to have interviewed any witnesses or taken any statements that would corroborate S.B.'s report. Fourth, Officer Ashton did not interview the Defendant and no incriminating statements were submitted to the Court. For these reasons, I do not find proof by a preponderance of the evidence is present as to Violation Number 1.

**ACCORDINGLY**, I recommend to the District Court that the Defendant be found to have violated his supervised release with respect to Violation Numbers 2, 3, 4, and 6, and that Violation Numbers 1 and 5 be dismissed. I further recommend that a sentencing hearing be set at the earliest convenience of the District Court for final disposition of this matter.

---

[3] It is difficult to determine some aspects of what is being said on the body camera footage but S.B. is clearly upset as she relays to Officer Ashton details about what happened. From what I could glean, S.B. seems to be saying that she knows the mother of Defendant's children, was helping Defendant's daughter, and Defendant came to her home and punched her on September 18, 2019. This narrative does not contain enough information for me to understand and determine what gave rise to situation.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 28th day of December, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE